Good morning all. Our first case for argument this morning is BankDirect Capital v. Texas May it please the court, I am Wesley Morset from Bartlett Beck. I represent the appellants, BankDirect Capital Finance and Texas Capital Bank. BankDirect and Texas Capital Bank bring this appeal because the district court abused its discretion in granting capital premium injunctive relief for which capital premium has no likelihood of success to obtain on the merits. There's the rub. Where is the injunction in this case from which you are appealing? It's in the Northern District of Illinois. No, where is the injunction? I looked to find an injunction and I must say I couldn't find one. And the very fact that the parties are debating about what the terms of this supposed injunction are is a tip off. Well, the injunction was captured in the memorandum opinion order dated November... That is not an injunction. That's an opinion. Is there an injunction? Rule 65d says an injunction must be on a document separate from any other document. Is there an injunction? I looked and couldn't find one. This is the only document we have purporting to be an injunction. This gives us a problem because what happened in this case is that the plaintiff wanted an injunction and what he got was an opinion, not an injunction. There is no binding injunction in this case. The appeal should have come from the plaintiff who wanted an injunction and didn't get it. It's not clear to me how the defendant, which is not subject to an injunction, can appeal. We agree with the court finding that there is no injunction. Did anybody notice that there was no injunction and ask the district court to enter one? No. Alright, I've got a second question. Has the security ordered by Judge Lee been posted? No.  Rule 65c says that the validity of an injunction depends on security being posted. It doesn't say it depends on security being ordered. It says it depends on security being posted. And there is a lot of authority for the proposition that if security is not posted, there is no injunction. We would also agree with the court on that. But you didn't make either argument in your brief. We may need some supplemental filings on both appellate jurisdiction, whether there is anything complying with Rule 65d, and whether the injunction proponent's failure to post security simply cancels any judicial relief. But it looks to me like there is a very good chance that there are no merits in need of decision in this appeal. Alright, the parties have ten days to file simultaneous briefs on the points that Judge Easterbrook has outlined. Thank you, Your Honor. Counsel, if you ever want to argue the merits, this is your opportunity. We won't hold a second oral argument. My mistake. As I was saying, the district court granted relief that capital premium has zero likelihood of success to obtain. And in fact, the district court granted relief that capital premium did not even seek in the underlying action. Further, the district court erroneously granted such relief for a term exceeding any term ever contemplated or provided for in the parties' agreement, and did so without satisfying all the requirements of Federal Rule of Civil Procedure 65. Specifically, the district court's preliminary injunction should be reversed for three reasons. The first reason is that in requiring Bank Direct to continue purchasing eligible loans, the district court was not in compliance with Federal Rule of Civil Procedure 65 by failing to provide any finding of or reasoning to support a likelihood of success on the merits by capital premium on the purchasing issue. Now, this is injunctive relief that capital premium neither moved for nor provided the requisite showing of a likelihood of success to justify. And Judge Gottschall's November 29, 2017 order requiring Bank Direct to continue purchasing eligible loans as injunctive relief did not state so in the opinion. It was only in Judge Lee's March 12, 2018 clarification order that the district court first explicitly stated that the injunction required Bank Direct to continue purchasing eligible loans. But neither Judge Gottschall's order nor Judge Lee's clarification of that order provided any finding of or reasoning to support a likelihood of success on the merits by capital premium on the purchasing issue. Failure to do so does not satisfy Rule 65 and warrants reversal. The second reason is that by granting capital premium's injunction, the district court has extended the party's relationship beyond any term ever contemplated or provided for in the party's agreements. A de novo interpretation of the party's agreements shows that Bank Direct's servicing and purchasing obligations have already expired, giving capital premium no likelihood of success. What is the date that you assert on the merits that expired? We believe the most reasonable date is January 31, 2016. That was the date that was set for the contracts to expire in the event that the option was not exercised and capital premium did not provide notice of extension. So this is the fourth of the four options that are described? Well, January 31, 2016 is set up sort of like a default date. And that's the date that takes effect in the absence of an extension. The way the contract is drafted, it's drafted for the arrangement to terminate in one of three events. Now, one of those events would be that capital premium is purchased either by Bank Direct or another party, or Bank Direct decides that it does not want to purchase capital premium. And if there's no extension, it terminates by January 31, 2016. Now, the June 1, 2018 date is actually a cap on the maximum extension of the arrangement, but it requires that capital premium provide written notice by January 4, 2016. So you stand on the date of January 31, 2016 rather than June 1, 2018? Well, our position is that January 31, 2016 is the most reasonable date here because they did not provide a notice of extension. But to the extent that this court agrees with the district court, this agreement is still kept at June 1, 2018, which at this point, we're about four months past that date. Last, the last reason is capital premium has no likelihood of success of showing an obligation of Bank Direct to continue purchasing eligible loans because regardless of which side's underlying theories of the case succeeds, under no scenario can the contractual obligations, the conditions precedent required to create Bank Direct's obligation be satisfied. Regardless of the harm to capital premium, a court cannot lawfully issue a preliminary injunction where there is no likelihood of success. First, I would like to address the issue of the parties purchasing and servicing obligations having expired. A court cannot lawfully grant an injunction that's intended to preserve a contractual right that no longer exists. Section 1.01 of the Master Transaction Agreement, along with Section 3.01 of the Loan Purchase, Sale, and Servicing Agreement, define the terms of the parties' servicing and purchasing obligations. Now, as I explained, under these clauses, the parties' purchasing and servicing relation, absent a default, was intended to expire in one of three ways. On the closing date of a purchase of capital premium, either by Bank Direct or another party that Bank Direct has allowed, on the default termination date of January 31, 2016, if Bank Direct did not decide to purchase capital premium, or on the extended termination date no later than June 1, 2018, but only if capital premium provided formal notice of extension by January 4, 2016. Further, in the event of default, Bank Direct could terminate the relationship immediately with notice. Under this plain reading of the contract, the longest possible term of the parties' servicing and purchasing relationship was June 1, 2018, approximately four months ago. But in analyzing these clauses, the District Court relied on an erroneous interpretation of the loan purchase commitment termination date, and holding that Bank Direct's servicing obligation did not terminate by January 31, 2016, and required Bank Direct to continue purchasing and servicing loans through the end of litigation, regardless of the fact that capital premium ultimately seeks rescission in this case. In short, the District Court held that because Bank Direct gave notice of its intent to exercise the option, capital premium was not required to provide written extension by January 4, 2016, for the agreements to extend past January 31, 2016. In other words, under the District Court's interpretation, once Bank Direct gave notice of its intent to exercise the option, the only way for the parties' relationship to end was for Bank Direct to close on that option, regardless of capital premium's unwillingness to do so. But the District Court's order relies on exactly the type of unreasonable contract interpretation that New York law discourages. Under New York law, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expression of the parties so that their reasonable expectations will be realized. A court should never interpret a contract in a manner that would be absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties. And a construction of a contract that would give one party an unfair and unreasonable advantage over the other, or that would place one party at the mercy of the other, if at all possible, should be avoided. But this is exactly the type of unreasonable interpretation the District Court's order rests on. The court's erroneous interpretation of the contracts allows capital premium to extend the terms of Bank Direct's servicing and purchasing obligations indefinitely by simply refusing to close on the option. Such a reading is clearly contrary to the reasonable expectations of the parties. The District Court evidentiary hearing, both sides agreed that this contract was always intended to be set up in a way where there would be a relationship for five years. And at the end of that five years, Bank Direct would either purchase capital premium or the two companies would wind down the relationship over a span of time no longer than two and a half years. And that's where you get that June 1, 2018 date. That's the one. The parties never intended to be bound indefinitely, and Bank Direct surely never intended to enter into a contract where capital premium has more rights and fewer obligations and breach than it does in performance. Because capital premium refused to close on the option and never provided the required notice by January 4, 2016, the most reasonable termination date of Bank Direct's servicing and purchasing obligations is the January 31, 2016 date. But even if Your Honors agreed with the District Court that that extension was not necessary to extend past January 31, the contract was always intended to have a maximum extension termination date of June 1, 2018, and we're already four months past that date. Like an Orion Sales v. Emerson Radio Corps, where this court held that the District Court's preliminary injunction, prohibiting the party from terminating a license agreement, expired along with the agreement, the court should hold here that the District Court's injunction expired with the expiration of Bank Direct's purchasing and servicing obligations under the party's agreements. Mr. Morissette, what if the scenario is this? What if none of the four exceptions apply? You've got a court-ordered marriage here of two companies that have to continue to do business even though they don't want to anymore, at least one doesn't want to anymore. And we're then left with New York law with this disfavor of our agreements in perpetuity. Is it the case that once the injunction or non-injunction is litigated that the parties go back to negotiations? Or what's the next step? Well, in this scenario, we've withdrawn any claim for specific performance and this relationship is over. Judge Gottschall actually acknowledged this in her order saying, of course, these companies will not be working together in perpetuity. The issue is an injunction cannot extend past the terms of the agreement. The capital premium doesn't have the right to have an extended contract. Now, to the extent that the injunction seeks to require us not to early terminate the agreement, that's a different matter. But here we are past the longest possible term. And it would be an unreasonable interpretation of the contract for a no end date to ever apply. Mr. Morissette, do you want to reserve five minutes? Yes, I'd like to reserve the remainder of my time for rebuttal. Thank you, Your Honors. Thank you. Mr. Primo-Hopkins? May it please the Court. Mark Primo-Hopkins on behalf of Capital Premium Financing. Appellee. Initially, I would just say, Judge Easterbrook, we appreciate the issues raised and we'll be addressing them in the supplemental briefing. Why did you not alert the district court to the need to comply with Rule 65D? You asked for an injunction and didn't get one. You would think that would be very high on a list of lawyers' things to do. Your Honor, the answer is I don't know. I was not on the case. But with regard to my partners, what I would say is what we received from Judge Gottschall is styled as a memorandum of opinion and order. The last paragraph specifically dictates activities that are restrained. And Rule 65D specifically says that doesn't work. Federal rules get enforced. We've dismissed appeals in these circumstances. I understand, Your Honor. My other question is do you agree with Mr. Morrissette's statement that no security has been posted? Your Honor, no security has been posted. So what do you think about Rule 65C, which says no security, no preliminary injunction? It's as simple as that. The district court has entered an order allowing the security to be posted on December 21st of this year and given us 60 days. The rule still says no security, no injunction. So when you post security, there can be an injunction. Your Honor, to be fair, I think we're going to have to address these arguments more fully in our supplemental briefings. It's just I do not understand how this case can reach the Court of Appeals and be fully briefed without the lawyers for either side having thought about the meaning of Rule 65C or Rule 65D. They are not hard to understand. We will make sure to address that in the supplemental briefing, Your Honor. With regard to the issues that have been raised on appeal by Bank Direct, Bank Direct's appeal presents really two issues as we see it for this court to decide. The first is with regard to the arguments that have been raised before the Seventh Circuit, were those arguments waived below by Bank Direct's intentional relinquishment of arguments that it knew and actually tried to use to benefit itself before the district court first? And second, assuming the Seventh Circuit at the panel concludes that the arguments have not been waived and addresses them on the merits, there has been no appeal of the district court's irreparable harm findings. There has been no appeal of the balancing of the harms. There's no appeal of the success on the merits as to the agreed question that was presented to the district court on indemnity. And there has been no appeal of the sliding scale in terms of evaluating the weight of the likelihood of success as compared to the weight of the harms issues. And in that context, and given the preliminary injunction standard, if the Seventh Circuit, if the panel is to address the merits, the question as has been presented is, does capital premium have any chance of success on the merits? There is nothing on the other side before the Seventh Circuit and the panel to weigh against that. And so that's how we understand it as the issues presented. They only relate to success on the merits, and therefore the question is, has capital premium, did it satisfy its obligation with regard to proving any success on the merits below, as there is nothing to weigh on the other side. Addressing waiver first. The panel is familiar with the standard waiver's affirmative relinquishment of a known right. Here, Bank Direct attempted to justify the actions that it took on May 1st of 2017 by enforcing its contractual rights on May 1st of 2017 under the Master Transaction Agreement. It sought to enforce that. Consistent with its position on May 1st of 2017, in November of 2017, Bank Direct filed a 30-minute complaint. That's at docket 160. And there, Bank Direct represented to the court, the district court, that the Master Transaction Agreement and the transaction facility documents are in full force in effect. And they actually sought, as relief, to have the district court declare that the Master Transaction Agreement is valid, enforceable, and in full force in effect. Those are paragraphs 169 and 173 of docket 160 below. That was November 2017. As part of the preliminary injunction briefing, and in Judge Gottschall's opinion, she noted that the parties were in agreement. There was one issue to be addressed with regard to success on the merits, and that was, do Bank Direct's contractual rights that it sought to enforce to indemnity allow it to take the actions it took? The only reason that was presented to Judge Gottschall was enforcing the contract. And by definition, that's an express rejection of a claim that the contract has terminated. With regard to waiver, I would also draw the panel's attention. It appears from Bank Direct's reply brief at page 5 that it has conceded that it waived any other justification for its termination of capital premium as a servicer. On page 5 of its reply brief, Bank Direct says, any waiver based on the narrow statements in Bank Direct's brief. Now, those narrow statements were, Judge Gottschall, the only thing that you need to consider with regard to success on the merits is indemnity. That's what they told Judge Gottschall. And now what they've told the panel in the reply brief is, any waiver based on those statements would relate only to the justifications for the actions taken on May 1. And the actions taken on May 1 include an attempt to terminate the servicing relationship. So with regard to servicing, it appears that, at least with regard to Bank Direct's reply brief, there is not a dispute with regard to has that been waived. But let me address briefly the two arguments that they do make. Termination. Has the termination argument been waived? Bank Direct appears to take the position in its briefing that there was this shifting going on below that then allowed it to later raise arguments that it had not raised before. There was no shifting below that made termination of an agreement on January 31st of 2016 more or less clear. That argument was known. And when Bank Direct told the court, we intend to enforce our rights under this contract, and that's how we will prove that capital premium does not have success on the merits, that was intentionally relinquishing the ability to argue that the contract is terminated. And that termination argument, that is the exact same for servicing and for purchasing. The entire argument rests on the loan purchase commitment termination date. That's the basis for both, for servicing and for purchasing. So any argument that when purchasing arose, we had a different termination argument that we didn't know about before, that from our perspective is an empty argument. Nothing changed between January 2016, between May of 2016, or during the hearing in June of 2017 or September of 2017 as to the termination force and effect of this agreement. And Bank Direct never raised those issues. Now, with regard to purchasing specifically, Bank Direct raises an additional argument with regard to purchasing, and that's the conditions precedent. That was an argument that was first raised only in front of Judge Lee with regard to the motion for clarification, and it only relates to the purchasing obligation. It does not relate to the servicing obligation. In this regard, Bank Direct's arguments that some shifting below sort of perked it up to the idea that purchasing was involved in the case or in the preliminary injunction is not supported by the record. Bank Direct knew, because it submitted to Judge Gottschall to try to avoid the preliminary injunction, it said, Judge Gottschall, if you enter this injunction that Capital Premium has requested, we will suffer harm. To try to argue balancing of the harms, they argued, we will suffer harm because we will continue to have to fund and purchase millions of dollars' worth of new loans. That's at Docket 147. It's in the response appendix at 354 and 357. Bank Direct did not claim at that time that it had no obligation to purchase any loans. And it can't be that presentation of that argument in favor of Bank Direct doesn't waive the ability to present it in the success on the merits. So you can't have it both ways. You can't have it that we can use purchasing and inject purchasing into the case to try to avoid the injunction on balancing of the harms, but not raise it with regard to success on the merits where we have specifically limited the basis for our defense and, to be clear, the only thing that's up on appeal is success on the merits. So our position is that that is intentional relinquishment of that condition precedent argument. They understood that purchasing was going to be implicated. They understood, presumably, the terms of the contract that they're now arguing to the panel. And by choosing, strategically choosing, to limit the basis on which they sought to avoid the preliminary injunction, they have affirmatively relinquished those and waived the arguments that they now press. And there is no case that Bank Direct cites that allows a party who knows of an argument that could avoid relief, affirmatively limits and excludes and presents only a single argument to then resurrect those arguments later, after the hearing, after the evidence has come in. There is no case that Bank Direct cites that would allow that. Counsel, on the purchasing issue, when does Bank Direct's obligation to continue to purchase loans end? Your Honor, the obligation to continue to purchase loans ends when one of the dates under the loan purchase commitment termination date apply. Either that or when the transaction facility itself terminates. Those are two separate pieces. But the only basis that Bank Direct argues as to why the obligation should be terminated is the loan purchase commitment termination date. So are we past that date, or is the latter scenario of as long as the termination, the transaction facility date, does that date apply because that's being kept alive as a result of the litigation? I believe Your Honor is on point with the latter. It's not to say that the loan purchase commitment termination date could not occur in the future. It could. It could occur in the future. As I understand it, what the parties contemplated in doing this deal was that it would end one of two ways. It would end either with a purchase or with an expression of intent not to exercise the option, and the parties would go their own way. Now it's important to understand sort of what happened during this relationship. There's a multi-million dollar book of loans that is shared between the parties right now. And so both parties certainly contemplated that whether it ended in a purchase or whether it ended in a non-purchase, there would be an agreed-upon wind-down. And that's what you see in the extension date. Had they said, we don't intend to enforce the option, that's what you see there in the draft APA. There also is reference to transition agreement. They understood that this is not an agreement that can go poof overnight. The parties never contemplated that, that this was an agreement that could go away at Bank Direct's unilateral choosing overnight. And briefly, Your Honor, asked about the different dates in the loan purchase commitment termination date because it's the earlier of a series of dates. An asset purchase closing, which has not happened. It doesn't mean it won't happen, but it hasn't happened. The purchase transaction date, CPFI purchase transaction date, which is a date if CPFI were to be purchased by some other entity, a third party. So that was contemplated by the parties. And then the CPFI loan purchasing and servicing extension date. And that date, that's the date they rely on for this, 2018, June 1 of 2018 date. That date, again, assumes that Bank Direct is not intending to exercise the option. We have never been in a world since January 4 of 2016 where Bank Direct did not intend to exercise the option. They still, through their damages claim, are intending to, as their November 2017 complaint shows, enforce the option. So the plain language, we think, supports... The best indicator of the party's intent on this termination front is not just the plain language, but the plain language supports it. It's also the party's conduct, and New York law recognizes that. The party's conduct here is that for approximately 20 months, 19 months, after January 31 of 2016, the parties continued to perform as if the loan purchase commitment termination date had not occurred. And it was only raised after the fact, after this preliminary injunction was entered, or, excuse me, after the hearing on the preliminary injunction, that this issue was raised. Let me briefly touch on the condition precedent argument. Our position there is, first of all, just to remind the panel, that only relates to the purchasing obligation, the purchasing aspect of the injunction. In that regard, Bank Direct presents what we see as a false choice. What they say is, it's sort of a head's-eye-win-tails-you-lose situation, where they say there are conditions precedent, one of which is all of the agreements in the transaction facility are in force, and another of which is capital premium, my client, is not in default. And so what they say is, at the end of this litigation, there's only two outcomes. Either the option agreement is enforceable, and you're in default, for not having consummated it, or the option agreement is not enforceable, and therefore, the reps and warranties that you made previously about the agreements being enforceable somehow become untrue at the time you made them. I think that we do not know how this litigation will end, is sort of the overriding point. We don't only seek rescission of the option agreement, at docket 172, paragraph 179, we make clear in our counterclaims that alternatively we seek damages. And we included an example in our response brief of an outcome, whereby the either-or that Bank Direct has presented would not come to be. And that is, the option agreement itself could be enforceable. But that Bank Direct's conduct in either presenting a modified asset purchase agreement or through some other breach, through some other conduct of its own, has precluded its ability to exercise that option. That would be an outcome that is sought by us, and also is one whereby the either-or that they present would not be present. That is, both the option agreement would be enforceable, and capital premium would not be in default. And so we see this as a false choice. Finally, the argument that they make would allow them, based on sort of the speculation about hypothetical outcomes, it would allow them to conceivably benefit by ensuring a condition can't be satisfied by their own misconduct. And New York law does not allow that. And particularly at the preliminary injunction stage, page 23 of their reply brief, they raise a litany of factual disputes, as we see it, with regard to their conduct, and whether their conduct is, quote-unquote, bad enough to merit unclean hands or something like that. But that's a factual dispute. That's not even appropriate for summary judgment, let alone a grounds on which to reverse likelihood of success at the preliminary injunction stage. So I would end, Your Honors, by saying that initially and primarily, Bank Direct waived, affirmatively relinquished the arguments that it made on appeal below. And an argument that the district court somehow didn't address those is a little bit backwards, them having been waived and relinquished. Judge Lee, you know, he made that clear. He confirmed on the record with Bank Direct's counsel, didn't you argue in front of Judge Gottschall that you would be harmed by the purchasing? And he said yes. And that is the definition of waiver. You didn't argue it for success on the merits, you argued it for balancing of the harms. We believe that on the merits, Your Honors, that the plain language and intent of the parties also support us. And so we'd ask that you affirm the district court's rule. Thank you. Mr. Morset. Thank you, Your Honors. I would like to first address the waiver issue. The statement that Bank Direct made was specific to the May 1 actions. Now, it was a very narrow statement. Those May 1 actions were centered around seeking indemnification. And in seeking indemnification, Bank Direct sent Capital Premium several default notices and notice of indemnification. Now, in those default notices and notices of indemnification, Bank Direct cited several different events of default. And the statement that Bank Direct made to the court was in considering those May 1 actions and all of those events of default that were indicated in those notices, the court only need to consider the indemnification default for purposes of the May 1 actions, which all centered around trying to recover funds for the indemnification fees. And those indemnification obligations arose from breaches occurring during the normal life of the contract, which was the breach of the option and seeking indemnification for what we believe is a breach. More particularly, especially to the purchasing piece, a waiver requires an affirmative act. And Bank Direct could not have waived an argument against relief that was not sought. Capital Premium seeks to shift the burden of what it gets in injunction by requesting specific things and arguing that because we did not argue against other possible injunctive relief that they did not seek, did not make a showing of a likelihood of success on, that we somehow waived that and it gets thrown in with the rest of the injunctive relief. But that's not the standard. They still bear the standard of showing a likelihood of success. And just because there's a tangential mention to it in harm still does not satisfy the requirement that they show a likelihood of success. And regardless of whatever harm Capital Premium may seek, I mean may suffer in the absence of injunctive relief, absent a likelihood of success, an injunction cannot lawfully be issued. I also want to jump back to the conditions precedent issue. Opposing counsel said that we don't know how this litigation will end, which may be true. But we do know how it won't end. And it will not end with these two companies in a purchasing and servicing relationship. How do we know that? The relief sought on both sides. So Capital Premium in its own complaints seeks relief of rescission and damages. Nowhere in there is any seeking to continue purchasing a servicing obligation. And Bank Direct certainly does not seek the continuance of the purchasing and servicing obligation under its request for relief. Another point. The closing of the option and the enforcement of the option agreement are two separate issues. Now the option by contract was intended to close within 30 days of being exercised. So the idea that it was a date that could be way out in the future is not true. It was always supposed to be within 30 days. So we're talking January 2016, which goes hand in hand with the January 4th notice requirement, the January 31st, 2016 termination date, in the event that there is no exercise of the option. So exercising the option did not make the relationship go on in perpetuity. It was only supposed to be a 30-day issue. So this relationship could easily be ended in a 30-day period? Yes. This agreement was always intended to terminate no longer than June 1st, 2018 and under what everyone thought was the likely scenario, January 2016. Now I also want to address the notion that there's an implied contract because we kept doing business while in litigation. This case went into litigation shortly before the exercise date, so November 2015. At that point, we were seeking to enforce the option. And since we have taken a wide claim for specific performance and under New York law, where after the expiration of a contract, fixing the rights and obligations of the parties, they continue to do business, it's still possible to find that certain findings will imply that this was terminable at will. And the court in that situation will look at things like the circumstances surrounding and the understanding between the parties. Right now, we're only in business together because of injunctive relief. So capital premium has much notice that this is not a relationship that Bank Direct intends to sustain. With that, I'm over my time. Thank you, Your Honor. Thank you, Mr. Marsad. Thank you, Mr. Pena-Hopkins. The case is taken under advisement. Court will proceed.